The BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DIST. NO. 202, et al., Plaintiffs,

v.

ADMIRAL HEATING AND VENTILATION, INC., et al., Defendants.

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DIST. NO. 205, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

The STATE OF ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 C 3046, 79 C 3077 and 79 C 5253.

United States District Court, N. D. Illinois, E. D.

May 21, 1982.

Thomas M. Genovese, Thomas J. DeMay, Bruce J. Baker, Asst. Attys. Gen., State of Illinois, Chicago, Ill., for plaintiffs.

John E. Burke, Fred Mattlin, Claudia Lovelette, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These three class actions charge 22 piping construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 to 1977. Defendants have moved for summary judgment as to all pre-January 31, 1975

claims of the State of Illinois ("Illinois"),[1] arguing such claims are barred by the Clayton Act's statute of limitations, 15 U.S.C. § 15b. Illinois has moved to strike a "scandalous" footnote from one of defendants' submissions in briefing the summary judgment motion. Both motions are denied.

*Inappropriateness of Summary Judgment*

■ There is at least no quarrel that January 31, 1975 is the potentially critical date:

(1) Plaintiffs' actions are predicated on the same facts as a criminal indictment returned against defendants January 31, 1979.

(2) Because these actions were filed during the pendency of the criminal case, the tolling provision for federal government proceedings, 15 U.S.C. § 16(i), applies.

(3) Clayton Act § 4B, 15 U.S.C. § 15b, establishes a four-year limitation period, to which the tolled time period must be added.

In combination, those factors support defendants' position that any claim against them arising out of illegal conduct earlier than January 31, 1975 (four years before institution of the criminal proceeding) is time-barred.[2]

Illinois responds by invoking the doctrine of "fraudulent concealment." Its Complaint in 79 C 5253 (Count I, ¶¶ 29–30) asserts that position in conclusory terms:

29. The plaintiffs and class members had no knowledge of the combination and conspiracy, or of any fact which might have led to the discovery thereof, prior to the filing of an Indictment by the United States of America, in the United States District Court, Northern District of Illinois, Eastern Division, against said defendants on January 31, 1979. Plaintiffs and class members could not have discovered the alleged combination and conspiracy by the exercise of due diligence since the combination and conspiracy set forth herein had been fraudulently concealed by the defendants by various means and methods used to avoid the detection thereof....

30. Plaintiffs, at all times, exercised due diligence in seeking to discover their cause of action.

In response to defendants' motion, Illinois fleshes out its "means and methods" allegation by charging defendants with:

(1) secret and covert communications and meetings;

(2) submission of fraudulent and complimentary bids that on their face appeared to be competitive;

(3) submission under oath of false affidavits of non-collusion, despite a statutory duty to the contrary;

(4) use of conspiracy "coordinators" to insure that rigged bids appeared competitive;

(5) avoidance of written notes of meetings to escape detection; and

(6) secret assignment of complimentary bid amounts between competitors.

Illinois claims *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir. 1975) teaches such "fraudulent concealment" tolls the limitations period until a plaintiff actually discovers the wrongs committed by defendants. In fact, however, *Tomera* said (citations omitted):

At least two types of fraudulent behavior toll a statutory period.... In the first type, the most common, the fraud goes undiscovered even though the defendant after commission of the wrong does noth-

1. Even though defendants labeled their motion as directed against "plaintiffs," defendants' memoranda discuss only the scope of Illinois' early knowledge of bid-rigging and price fixing.

2. Because they anticipated Illinois' fraudulent-behavior defense to their own limitations argument, defendants have asserted the added position that such defense may be established only where:

(1) Illinois failed to discover facts suggesting a possible claim until within four years of this action.

(2) Due diligence on Illinois' part would not have uncovered those facts earlier.

(3) Illinois' failure to discover those facts was attributable to affirmative acts or fraud by defendants.

ing to conceal it and the plaintiff has diligently inquired into its circumstances. The plaintiffs' due diligence is essential here.... In the second type, the fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed.... This type of fraudulent concealment tolls the limitations period until actual discovery by the plaintiff. The court in *Smith v. Blachley*, 198 Pa. 173, 47 A. 985 (1901), aptly stated:

> The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeals the statute pro tanto. Fraud is always concealed. If it was not no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If the plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud affirmative efforts to divert or. mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery.

Illinois' contention does not withstand analysis. All the alleged "means and methods" of concealment were themselves the essence of each "commission of the fraud" and *not* post-fraud cover-ups.[3] Thus defendants' conduct was not "fraudulent concealment," but rather the "first type" of fraudulent behavior spoken of in *Tomera*.

Accordingly Illinois may not stop the ticking of the limitations clock until the date of its actual discovery of the fraud. Instead it can rely on a fraudulent-conduct tolling of limitations only by proving the three elements identified in n.2. *See, e.g., Laundry Equipment Sales Corp. v. Borg-Warner Corp.*, 334 F.2d 788, 792 (7th Cir. 1964); *Thee v. Parker Bros., Inc.*, 1978–1 (CCH) Trade Cases ¶ 61,966 at 74,086–88 (E.D.N.Y.1978).

In that respect, defendants have offered evidence tending to negate only the first of those elements (lack of knowledge of a possible claim), not directly attacking the due diligence and causation elements.

As is always true on a summary judgment motion, defendants as moving parties have the burden of proving the absence of any genuine issue of material fact. Illinois has no evidentiary obligation unless defendants *initially* establish the absence of a genuine issue. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1170 (5th Cir. 1979).

Just as in *Beef Industry*, defendants have made an evidentiary showing suggesting Illinois' knowledge, actual or constructive, of facts suggesting the existence of its claim. Of course if Illinois had such knowledge before January 31, 1975, that would destroy its fraudulent-behavior defense as a matter of law and require summary judgment in favor of defendants. But defendants simply have not established Illinois' knowledge beyond factual dispute, so that summary judgment is inappropriate.

What defendants have rather done is to offer bits and pieces of evidence purportedly showing Illinois had "direct knowledge of facts supporting its claim long before the January 31, 1975 limitation date" (Def. Br. 7). But those bits and pieces do not prove *as a matter of law* even "constructive"

---

**3.** *See also Sperry v. Barggren*, 523 F.2d 708, 711 (7th Cir. 1975) and *Goldstandt v. Bear, Stearns & Co.*, 522 F.2d 1265, 1268 (7th Cir. 1975), whose fact situations and discussions make clear that only a later attempt to conceal the wrong—rather than further wrongful acts like the initial fraud—can be the *Tomera* "second type" of fraudulent behavior. Both those cases and *Tomera* also illustrate another meaningful factual difference important to the analysis: Here we have a continuing wrongful series of acts, as to *each of which* a statute of limitations must be applied. Each of the other cases dealt with the application of the statute of limitations to a single wrongful act or an entire action. To determine whether we are dealing with a "first type" or "second type" case, the facts must be reviewed in terms of each claimed violation.

knowledge on Illinois' part—they were not enough *as a matter of law* to "have aroused suspicion or curiosity on the part of plaintiff"[4] as to the wrongs asserted in the Complaint. That is so because almost without exception the evidence adduced by defendants really involves bid-rigging conspiracies by mechanical contractors in downstate Illinois, not in the Chicago area with which Illinois' Complaint is exclusively concerned.

Thus the two 1970 Skirnick memoranda mention some Chicago contractors who are now defendants here; but they do so only in the context of illegal conduct in downstate Illinois construction projects.[5] Downstate projects were also involved in Illinois' 1973 institution of a criminal action and its 1975 filing of a civil suit.

Indeed, as to Chicago projects defendants point only to pre-January 31, 1975 rumors of statewide bid-rigging, reflected in passing references in documents dealing with downstate projects and in newspaper articles, and to the single matter discussed in n.5. No demonstration that Illinois knew about bid-rigging among principally downstate contractors and on downstate projects can establish the necessary "suggestion" as to the present defendants and their Chicago projects as a matter of law. Nor can one-sentence references to one Chicago project or to rumors of statewide illegality bear the weight defendants seek to place on them. It must be remembered that on the present motion all reasonable factual inferences are drawn in favor of Illinois and not defendants. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

In sum, a genuine issue of fact exists as to whether before January 31, 1975 Illinois knew facts sufficient to suggest a possible claim against the present defendants for Chicago-area bid-rigging. That open factual issue by itself precludes summary judgment now. Illinois' fraudulent-behavior defense remains viable at this stage of the litigation.[6] *Accord, Beef Industry*, 600 F.2d at 1170–71.

### Illinois' Claim of a "Scandalous" Footnote

■ Footnotes in the law have occasionally acquired lives of their own, even sometimes fame.[7] Illinois however moves for a kind of revisionist history in this case, seeking to strike an offending footnote from one of defendants' memoranda.[8] This

---

**4.** *Morgan v. Koch*, 419 F.2d 993, 998 (7th Cir. 1969).

**5.** Skirnick's first memorandum does contain a reference to *one* Chicago construction job ("The Circle Campus was fixed..."). It does so however only in the course of identifying the case of characters engaged in the downstate antitrust violations. Moreover an affidavit from Illinois' responsible official reflects that the bidding on the Chicago Circle project (which dated back to 1965–66) was the subject of major investigative activity and extensive inquiry by Illinois, producing no evidence of bid-rigging—at least sufficient to raise a factual issue as to due diligence. Most importantly, it would require an impermissible leap of faith to move from the one-sentence statement in the Skirnick memo to alleged knowledge at that time of a conspiratorial web generally implicating Chicago-area bidding on public jobs. Perhaps the jury may ultimately decide such knowledge existed, but summary judgment cannot now be justified.

**6.** This Court is aware of Judge Leighton's recent opinion in the Sheet Metal Antitrust Litigation, *State of Illinois v. Climatemp, Inc.*, No. 79 C 4898, slip op. at 5–7 (N.D.Ill. Apr. 16, 1982) dealing with a similar motion. It is unclear from that opinion whether both the facts and the legal arguments before Judge Leighton paralleled those in this case. If either did not, the two opinions may be reconcilable. If both did, this Court respectfully disagrees with its Brother Leighton as to the appropriateness of summary judgment.

**7.** This is obviously not such a footnote. See instead, *e.g., United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n.4, 58 S.Ct. 778, 783–84 n.4, 82 L.Ed. 1234 (1938).

**8.** That memorandum was the *fifth* one filed on the principal motion. Then the briefing and supporting documents on Illinois' motion to strike added perhaps 70 more pages to the Court's reading burden (time that, without offense to counsel's literary style, might have been spent more profitably on matters—fiction or non-fiction—of greater appeal).

Court agrees fully with Judge Leighton's comments on an apparently like footnote and motion in his April 16 *Sheet Metal Antitrust* opinion (slip op. at 7–8) and will not dignify the matter further by discussion of the merits. Two procedural points however bear brief mention:

(1) Fed.R.Civ.P. ("Rule") 12(f), on which Illinois relies, provides for motions to strike *pleadings* containing "immaterial, impertinent or scandalous matter." But the offending footnote is in a memorandum, not a pleading. Though this Court might well have inherent supervisory power to cleanse the files of improper material, this is not an occasion to exercise such power.[9]

(2) Essentially Illinois' motion poses issues as to its conduct during discovery incident to briefing the summary judgment motion. If such issues were to be addressed at all (and this comment should not be read as an encouragement), it should have been by a proper motion for discovery or sanctions or both.

Illinois' motion to strike must be denied.

*Conclusion*

Defendants' summary judgment motion as to claims arising before January 31, 1975 is denied. Illinois' motion to strike is denied as well.

---

**9.** Rule 11, read against the general background of Rule 7(b)(2), might also conceivably subject the attorney signing a non-pleading containing "scandalous or indecent matter" to "appropriate disciplinary action." This entire area of sanctions is under active study by the Advisory Committee on the Rules.