STATE OF ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DIST. NO. 202, COOK COUNTY, ILLINOIS, et al., Plaintiffs,

v.

ADMIRAL HEATING AND VENTILATION, INC., et al., Defendants.

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DIST. NO. 205, COOK COUNTY, ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 C 5253, 79 C 3046 and 79 C 3077.

United States District Court, N.D. Illinois, E.D.

May 5, 1983.

---

See also, D.C., 564 F.Supp. 96.

Neil F. Hartigan, Ill. Atty. Gen., Bruce J. Baker, Asst. Atty. Gen., Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiffs.

Edwin C. Thomas, Michael A. Forti, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These three class actions [1] charged 22 piping construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 to 1977 in violation of the Sherman Act. Defendants Elmer R. Bruksch and Economy Mechanical Industries, Inc. (collectively "Economy" and hereinafter treated in the singular) have moved alternatively:

(1) to sever the Illinois action from the District actions or

(2) for a separate trial of Illinois' fraudulent concealment claim (Complaint Count I ¶¶ 28–30).

Plaintiffs in the District actions have moved to consolidate all three actions for all purposes. For the reasons stated in this memorandum opinion and order, Economy's motion to sever and District actions plaintiffs' motion to consolidate are both denied, and Economy's motion for a partial separate trial is granted.

### Background [2]

One of the many earlier motions in these actions was defendants' seeking summary judgment because limitations allegedly barred all pre-January 31, 1975 claims by Illinois. *See* 94 F.R.D. 300 (N.D.Ill.1982). Illinois responded the statute of limitations had been tolled until Illinois actually discovered defendants' alleged wrongs. But defendants contended Illinois had actual or constructive knowledge before January 31, 1975 of facts suggesting the existence of its claims. Such knowledge, if established as a matter of law, would have defeated Illinois' effort to reach back of the limitations period. This Court found defendants had not established Illinois' knowledge beyond factual dispute. *Id.* at 302–03.

In support of their unsuccessful summary judgment motion defendants had pointed to the fact Economy's attorney Edwin C. Thomas ("Thomas"), as an Illinois Assistant Attorney General, directed a 1970–78 investigation of bid-rigging conspiracies by mechanical contractors in downstate Illinois. Defendants argued Thomas' downstate in-

---

1. 79 C 3046 and 79 C 3077 (the "District actions") are fully consolidated. 79 C 5253 (the "Illinois action," brought by the State of Illinois ["Illinois"]), is consolidated for discovery purposes only.

2. In stating the background facts this Court has plagiarized freely from its own earlier opinions.

vestigation and related antitrust litigation had provided Illinois with knowledge of Chicago-area bid-rigging before January 1975, and Thomas' own deposition testimony later confirmed he had learned of possible (or perhaps even probable) Chicago bid-rigging during his investigation.

That confirmation then spurred Illinois to move for disqualification of Thomas and his law firm Bell, Boyd & Lloyd ("Bell, Boyd") from further participation in the Illinois action. This Court granted that motion, for Thomas himself had established his "substantial responsibility" as a public official over a "matter" at the core of the Illinois action: defendants' alleged fraudulent concealment and Illinois' alleged knowledge of defendants' Chicago-area activities. See 553 F.Supp. 178, 181–83 (N.D.Ill.1982) (the "First Disqualification Order").

In its turn the First Disqualification Order spawned a series of motions:

1. Economy moved (a) to sever the Illinois action from the District actions and (b) to stay further proceedings in the Illinois action pending Economy's appeal of the First Disqualification Order. In the alternative Economy moved (a') to stay further proceedings in all three actions pending its appeal of the First Disqualification Order or (b') to stay that Order itself pending that appeal.

2. Plaintiffs in the District actions moved (a) to consolidate all three actions for all purposes and (b) to disqualify Thomas and Bell, Boyd from further participation in the District actions.

By its March 24, 1983[3] memorandum opinion and order (the "Second Disqualification Order," at 3, 7–8) this Court (1) denied Economy's motion and alternative motions for stays, (2) denied plaintiffs' motion to disqualify Thomas and Bell, Boyd from the District actions and (3) continued Economy's motion for severance and plaintiffs'

motion for consolidation pending completion of briefing on Economy's already-described supplemental motion for a partial separate trial. Now the completion of the latter briefing also permits a decision on the continued motions to sever and to consolidate.

### Consolidation, Severance and Separate Trial

All these actions involve the same alleged conspiracy among mechanical contractors in the Chicago area, and as an original matter consolidation of all three actions might well have been appropriate.[4] Indeed when this Court decided the class certification motions it had also inherited, it noted (Aug. 10, 1982 Memorandum Opinion and Order at 12):

Because of the concentric nature of the classes involved, the parties should consider whether full consolidation of the three actions is not now appropriate so as to substitute a single class for the two certified classes.

But the two Disqualification Orders changed things substantially. Without in any way questioning plaintiffs' present motives or intentions, this Court must note full consolidation at *this* stage would have the effect of extending the disqualification of Thomas and Bell, Boyd to the District actions, despite this Court's finding there are no grounds for that extension. See Second Disqualification Order at 5–7. This Court issued the First Disqualification Order for good reasons, but it has always recognized disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982). Whether disqualification in the District actions is imposed directly or indirectly (through consolidation), Economy would be deprived of repre-

---

**3.** All subsequent dates without year designations were also in 1983.

**4.** When this Court first inherited these cases (they were then about a year old), the District actions had already been consolidated but the Illinois action had been consolidated with them only for discovery purposes. That may well

have been due to the fact that when Illinois first moved to consolidate (just after it filed suit), a ruling on that motion would have required dealing with questions involved in pending class certification motions. See Plaintiffs' Feb. 14 Ans. Mem. 18 and Ex. A.

sentation of its own choosing, and this Court must be sensitive to that consideration of prejudice to Economy. *See id.* at 721–22.

Of course Economy's motion to sever the Illinois action is frankly an attempt to confine the consequences of disqualification to that action and to allow Economy to retain the services of Thomas and Bell, Boyd in the District actions. That latter interest looms large because of the present uncertainty as to the permissible participation of Thomas and Bell, Boyd in joint discovery and trial strategy efforts among defendants in the three actions. See Economy Jan. 19 Mem. 29–30; Mar. 1 R.Mem. 9–13. Economy forcefully argues unless there is severance it faces the full measure of the consequences an outright disqualification order visits on a party. *See Freeman,* 689 F.2d at 719–20.

Economy even more forcefully advances the imaginative alternative it later hit upon: separate trial of Illinois' fraudulent concealment claim pursuant to Fed.R.Civ.P. ("Rule") 42(b).[5] Economy contends (Mar. 14 Mem. 5) that alternative would allow Thomas and Bell, Boyd to represent it in the later joint litigation of the District actions *and* the Illinois action stripped of the fraudulent concealment issue. As argued by Economy, the Rule 42(b) route is superior to severance because the former will allow Economy to be represented by counsel of its choice in the ultimate litigation of all three actions.[6]

As might be expected, Illinois has opposed Economy's Rule 42(b) motion as vigorously as it opposed Economy's severance motion. Illinois' opposition derives from one premise: Its fraudulent concealment claim is "so interwoven" with the underlying claims of antitrust conspiracies that trial of the former cannot really be separated from trial of the latter. Illinois invokes *Gasoline Products Co. v. Champlin Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931), to argue (Mar. 25 Ans. Mem. 1–6) separate trials of the fraudulent concealment and liability issues would violate the Seventh Amendment. And it further contends (*id.* at 6–9) separate trials would in any event cause duplicative litigation and prejudice Illinois by "forcing" it to try the fraudulent concealment issue before it is fully prepared to do so. There is little (if any) substance to Illinois' dire constitutional and practical pronouncements.

By its terms Rule 42(b) is certainly broad enough to embrace Economy's motion in these actions. "Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." 9 Wright & Miller, *Federal Practice and Procedure* § 2389, at 284 (1971). This Court's discretion is defined by the purposes of the Rule (*id.* § 2388, at 279, footnotes omitted):

> The provision for separate trials in Rule 42(b) is intended to further convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties. The piecemeal trial of separate issues in a single suit is not to be the usual course. It should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule.

Separate trial of the fraudulent concealment issue in the Illinois action will clearly achieve those purposes. Separation of that issue will permit trial of the remaining issues to be completed more quickly and with less prejudice to the parties than if sever-

---

**5.** Rule 42(b) provides:

*Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

**6.** It may be added the separate partial trial *followed* by consolidation would appear to avoid the duplicative litigation necessarily caused by severance.

ance of the Illinois action *or* full consolidation of all three actions were now ordered. Separation is the best of all the alternatives proffered by the parties.

Contrary to Illinois' assertion (and as Economy notes (Apr. 6 R. Mem. 3)) the fraudulent concealment issue really *is* discrete. It poses one question: whether Illinois knew of facts before January 31, 1975 that would have put a reasonable person on notice of the existence of its Chicago-area claims. *See Hupp v. Gray,* 500 F.2d 993, 997 (7th Cir.1974). There is no need to flesh out the full alleged conspiracy to answer that question, and there is no doubt the concealment issue is thus "separable" within the definition of *Gasoline Products.* Separate trial of the concealment and liability issues simply would not cause "confusion and uncertainty" amounting to "denial of a fair trial." 283 U.S. at 500, 51 S.Ct. at 515.

Moreover, despite Illinois' stated worries on the practical side, (1) there is no real prospect of duplicative litigation and (2) prior discovery on defendants' summary judgment motion and on Illinois' disqualification motion must surely have revealed most of what is necessary for trial of the issue of Illinois' knowledge of defendants' Chicago-area activities. To the extent Illinois might need further discovery or reasonable further time to prepare for trial of its fraudulent concealment claim, it can simply ask for it.

One collateral issue should be noted. There is a potential pitfall on the way to Thomas' and Bell, Boyd's return to joint litigation of all three actions. Separate trial of the fraudulent concealment issue will decide that matter one way or the other, removing it as (1) the source of disqualification of Thomas and Bell, Boyd from the Illinois action and (2) the complicating factor in fully consolidating all three actions. But the First Disqualification Order (553 F.Supp. at 181 & n. 8) identified another possible and broader ground for disqualifying Thomas (and thus also Bell, Boyd) from the Illinois action. There was some hint in Thomas' deposition that he learned during his investigation of facts specifically related to Economy's possibly illegal conduct of its business, although he opted not to act on Chicago-area matters. Dependent on (1) how those facts are developed at the separate trial and (2) whether Thomas' earlier inaction might itself raise an appearance of impropriety now (*id.* n. 8), it may be Thomas could not "switch sides" and represent Economy against Illinois[7] even after the fraudulent concealment claim is determined separately.

At this stage, however, that issue is both problematic and premature.[8] Considerations of convenience, judicial economy and justice point decisively to separate trial of Illinois' fraudulent concealment claim and the related questions (1) what Illinois knew of defendants' Chicago-area activities and (2) when and through whom Illinois learned what it knew.

### Conclusion

District actions plaintiffs' motion for consolidation and Economy's motion for severance are denied. Economy's motion for a separate trial of Illinois' fraudulent concealment claim is granted. These actions are set for further status hearing at 9 a.m. May 18, 1983, at which time the parties shall apprise this Court of the status of their preparations for the separate partial trial.

---

7. Once again the consideration discussed goes only to the propriety of Economy's representation by Thomas and Bell, Boyd in the Illinois action, not the District actions.

8. In the interim period before trial of the fraudulent concealment claim is completed, joint discovery on *other* issues may resume—another advantage of separation. To allay their fears (Mar. 25 Ans. Mem. 9–11), plaintiffs may wish to move for a protective order governing Thomas' and Bell, Boyd's participation in those joint defense activities. Once the separate trial is completed the possibility of full consolidation and the need for further protective orders may be reassessed. In the meantime the First Disqualification Order remains in effect, barring Thomas and Bell, Boyd from representing Economy in the Illinois action and, of course, in connection with the separate partial trial.