FRANK E. BASIL, INC.; Guinness Flight Trust Corporation, (Guernsey) Limited, as Trustee of Trust 320; Maurice Lenack; Adele Lenack; and Jack Lenack, Plaintiffs,

v.

Arthur D. LEIDESDORF; John J. Robinson; Allan Esrine; and (ITI) Glendale, Inc., Defendants.

No. 87 C 10354.

United States District Court, N.D. Illinois, E.D.

May 16, 1989.

Jeffrey B. Maletta, Kirkpatrick & Lockhart, Washington, D.C., Kenneth A. Wexler, Lawrence H. Eiger, Jeffrey S. Wilson, Much, Shelist, Freed, Denenberg, Ament & Eiger, Christopher J. Murdoch, Sperling, Slater & Spitz, Chicago, Ill., for plaintiffs.

David L. Ross, Andres Rivero, Greenberg, Traurig, Askew, Hoffman, Lipoff & Quentel, Miami, Fla., Alan H. Silberman, Brian P. Norton, Sonenschein, Carlin, Nath & Rosenthal, James E. Beckley, Christopher J. Barber, Marsha A. Tolchin, Angeleke Tsiribas, James E. Beckley & Associates, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Frank E. Basil, Inc., the Guinness Flight Trust Corporation, and the Lenacks (Maurice, Adele and Jack) filed suit against Arthur D. Leidesdorf, John J. Robinson, Allan Esrine, and (ITI) Glendale, Inc. in this court on December 4, 1987. They amended their complaint on March 17, 1988, which this court dismissed for want of specificity on May 5. The plaintiffs filed their Second Consolidated Amended Complaint on July

14, 1988, and the defendants have made several motions to dismiss this one too.

The suit concerns the sale of convertible income debentures by R.V. Finance Corporation, N.V. and Rio Verde Energy Corporation. These debentures were to pay 7.5% interest and carried a right to receive 2.5 cents per ton of coal mined from properties owned by Heather Mining Company, Inc., a wholly owned subsidiary of Rio Verde. The plaintiffs allege that Leidesdorf, a Florida citizen and chairman of the boards of both of the debenture-issuing companies, and Robinson, the president of the companies, retained Esrine and Glendale as agents and financial advisors for the companies in the sale. Esrine and Glendale prepared an analysis of the operations and financial performance of Rio Verde, describing how the debentures would work and what they would yield. This analysis allegedly contained false and misleading statements. Leidesdorf and Robinson then mailed the Esrine/Glendale analysis to prospective purchasers of the debentures, many of whom acted upon its information (as well as other materials, some of them allegedly fraudulent) to purchase debentures between November 1981 and February 1982.

The Second Consolidated Amended Complaint (hereafter the "Complaint") consists of four counts. Count 1 is a claim of securities fraud under § 10(b) of the Securities Exchange Act of 1934 (" '34 Act"), 15 U.S.C. § 78j(b) (1982), and Rule 10b-5 issued thereunder, 17 C.F.R. § 240.10b-5 (1987). Count 2 is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (1982). Count 3 alleges fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262 (Smith–Hurd Ann.1988 supp.), while Count 4 alleges common law fraud.

*Venue*

The first motion comes from Leidesdorf, who contends that venue is improper here. Leidesdorf is correct, in a sense. The strongest argument that this venue is prop-

er stems from the '34 Act. The venue provision of the '34 Act reads in part:

> Any suit or action to enforce any liability or duty created by this chapter or rules or regulations thereunder ... may be brought in any ... district [wherein any act or transaction constituting a violation of the '34 Act occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business....

15 U.S.C. § 78aa. The plaintiffs concede that Leidesdorf is neither found in nor inhabits this district, and that he does not transact business here. They rely principally on § 78aa's provision for venue where "any act or transaction constituting a violation" of the '34 Act occurs in the district.

When § 78aa speaks of "any act or transaction" constituting a violation, it does not mean *any* act. That act must be an act " 'which represents more than an immaterial part of the allegedly illegal events.' " *Bath Industries, Inc. v. Blot*, 427 F.2d 97, 114 (7th Cir.1970), quoting *Puma v. Marriott*, 294 F.Supp. 1116, 1120 (D.Del.1969). The Complaint states that the following acts occurred in Illinois: (1) Leidesdorf and Robinson "enlisted the aid and assistance of Moshe Shaltiel, a broker whose principal place of business is in Chicago, Illinois ... to identify and introduce the defendants to prospective purchasers of the Debentures, including [the] plaintiffs." Complaint, ¶ 16. (2) The defendants transmitted false and misleading statements to Shaltiel, with the intent that Shaltiel pass them to the plaintiffs and others. One transmission was the mailing of the Esrine/Glendale analysis in 1981. The defendants allegedly sent the analysis "to Shaltiel in Chicago, and through Shaltiel to plaintiffs and other persons residing in this district and elsewhere...." *Id.* at ¶ 17. (3) Leidesdorf, Robinson, and Esrine misrepresented Rio Verde's having secured $4.5 million in outside financing "during the course of telephone conversations with Shaltiel in Chicago;" Shaltiel passed these misrepresentations to the Lenacks and Guinness.[1] *Id.* at ¶ 21. Shaltiel passed on

---

1. The Complaint further alleges that Shaltiel was present at a meeting where Leidesdorf and

Robinson misrepresented the additional outside financing to Basil on January 26, 1982. The

other misrepresentations as well. *Id.* at ¶¶ 22–24.

None of these acts forms a material part of the scheme that is alleged to have violated the '34 Act. The essence of the plaintiffs' '34 Act claims is that the defendants misrepresented certain facts to the plaintiffs. How the defendants got to know the plaintiffs, as alleged in (1) above, is immaterial to this scheme. Similarly, the route which the misrepresentations took is immaterial to the scheme for purposes of venue under the '34 Act. The plaintiffs never suggest that Shaltiel was privy to the defendants' misrepresentations. There are hints that he mailed fraudulent materials to persons in this district, but none of those persons is a plaintiff here, nor do the plaintiffs suggest how a mailing to other persons, some of whom may live in this district, was a material part of a scheme to defraud them.

The plaintiffs cite many cases in which a single mailing from or to a district helped establish venue in that district, but in all of these cases the mailing was one of many factors that made for proper venue. See *Lefever v. Vickers*, 613 F.Supp. 352, 353 (D.Colo.1985) (venue existed where defendant wrote letter to stock transfer service which operated in forum's district; transfer service followed instructions in the letter, which resulted in an illegal benefit to defendant); *City of Harrrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 467–68 (M.D.Pa.1985) (defendant misrepresented fact to plaintiff over telephone lines; plaintiff resided in forum's district); *Savin v. CSX Corp.*, 657 F.Supp. 1210, 1215 (S.D.N.Y.1987) (venue proper in forum where some of the members of plaintiff class received allegedly fraudulent material, and where events which defendant misrepresented actually took place).

■ This district is thus an improper venue under the '34 Act, when one looks at Leidesdorf alone.[2] This said, Leidesdorf should not think that he has prevailed. This is because defendants Robinson, Esrine, and Glendale have not objected to venue. Their acquiescence puzzled this court, and thus it asked Esrine and Glendale if they indeed wished to abide by the plaintiffs' choice of forum (defendant Robinson was missing when the court made this query). They replied yes, a trial in Chicago or New York would suit them fine. This court takes this as an admission that Esrine and Glendale are found, inhabit, or transact business in this district, as 15 U.S. C. § 78aa defines those terms. In *Burkhart v. Allson Realty Trust*, 363 F.Supp. 1286, 1292–93 (N.D.Ill.1973), the court determined that where venue was proper for one defendant in a case brought under the '34 Act, venue was proper for all defendants. As the *Burkhart* court observed, this serves "to avoid unnecessary multiplicity of suits and fragmentation of issues...." Requiring Leidesdorf to answer the plaintiffs in this court achieves those very goals.

*Rule 9(b)*

The next motion is one raised by all of the defendants.[3] They argue that the plaintiffs fail to plead fraud in each of their counts with the particularity required by Rule 9(b), Fed.R.Civ.P. That rule provides:

> In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally.

Rule 9(b) governs all of the plaintiffs' claims. See *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975); *Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1297 (7th Cir.1975) (Rule 9(b) covers and § 10(b) and Rule 10b–5 claims); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d

plaintiffs stated in open court on January 24, 1989 that this meeting occurred in Florida.

2. The plaintiffs argue that venue would be proper under RICO, see 18 U.S.C. § 1965(a), or the general venue provision contained in 28 U.S.C. § 1391 (1982). Because this court finds venue

proper under the '34 Act, see below, it is not necessary to discuss the merits of these contentions.

3. Except Robinson, who has not filed anything in this case. He is appearing pro se.

Cir.1983) (Rule 9(b) applies to fraud allegations in civil RICO complaints); *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F.Supp. 1262, 1265 (N.D.Ill.1985) (Rule 9(b) applies to common law fraud claims).

Rule 9(b) ensures that allegations of fraud are concrete and particularized enough to give notice to the defendant of the conduct complained of, and to enable the defendant to prepare a defense. See *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), aff'd 636 F.2d 1201 (2d Cir.1980). Rule 9(b) also protects the defendant from harm to his or her reputation or good will, and deters strike suits. See *Decker v. Massey–Ferguson Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

Courts read Rule 9(b) in harmony with Rule 8, Fed.R.Civ.P. See *Tomera*, 511 F.2d at 508. Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in addition to short statements of jurisdiction and the relief demanded. But because of Rule 9(b), it is insufficient to set forth general allegations when pleading fraud. See *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982) (conclusory language which asserts fraud, without a description of fraudulent conduct, does not satisfy Rule 9(b)); *Bartels v. Clayton Brokerage*, 631 F.Supp. 442 (S.D.N.Y.1986) ("[s]lightly more" is needed for Rule 9(b) than for Rule 8); *Tomera*, 511 F.2d at 508. Read together, the rules require a party to plead the time, place and contents of the fraud, but do not require the party to plead all of his or her evidence. *Id.* In fact, it is not necessary for a party to allege evidentiary details that will be used to support a claim of fraud at later date. See *Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D.Ill.1984) (plaintiffs need set forth only the basic outline of the scheme).

Generally a complaint of fraud or misrepresentation is sufficient under Rule 9(b) when it sets forth the time, place, and manner of false representations, identities of parties, and the consequences of misrepresentations. See *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp.

535, 540 (N.D.Ill.1981). In the present case, plaintiffs have sufficiently set forth the time period when the defendants allegedly made misrepresentations and omitted material facts. They have done this with both specific dates and approximate monthly time frames, both of which are proper ways of stating allegations under Rule 9(b). See Complaint, ¶¶ 21–26; *Onesti*, 619 F.Supp. at 1265 ("approximate time frame" is sufficient); *Trak Microcomputer Corp. v. Wearne Bros.*, 628 F.Supp. 1089, 1092 (N.D.Ill.1985) ("general time period" is sufficient). The Complaint also separately lists and sufficiently details the defendants' alleged misrepresentations. It identifies Liedesdorf, Robinson, Esrine and Glendale as the parties who made these misrepresentations, where the defendants made them, and what their consequences were. See Complaint at ¶¶ 15–28.

The plaintiffs' allegations are specific enough even for purposes of RICO. Plaintiffs who file civil actions under RICO need not present allegations as specific as a criminal bill of particulars, nor establish probable cause to believe that a defendant committed predicate racketeering offenses. See *Haroco v. American Nat. B. & T. Co. of Chicago*, 747 F.2d 384, 405 (7th Cir. 1984), aff'd 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam) (complaint adequately specified the transaction, the content and the identity of those involved; plaintiff need not prove predicate acts in complaint). The Complaint here sketches the specific times, places and contents of the alleged acts of mail and wire fraud, the identity of the parties engaging in this fraud, and the consequences of that fraud. The plaintiffs also allege the use of the mails, through the defendants' delivery of letters containing misrepresentations to the plaintiffs, and the use of the wires, through telephone conversations between plaintiff Basil and the defendants with regard to the purchase and sale of the debentures. The Complaint further identifies the mailings, their dates, and the role which they played in the fraud. This is sufficient to meet Rule 9(b). See *Harris Trust & Savings Bank v. Ellis*, 609 F.Supp. 1118,

1123 (N.D.Ill.1985), aff'd on other grounds, 810 F.2d 700 (7th Cir.1987); *Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983, 986 (N.D.Ill.1986).

■■■ The defendants argue that in each count the plaintiffs have grouped the defendants together, and thus the complaint is not specific enough as to each defendant's involvement. This argument is not persuasive, given the facts of this complaint. Where there are allegations of a fraudulent scheme with multiple defendants, the complaint need only "inform each defendant of the specific fraudulent acts" which constitute the basis of the action against the particular defendant. See *Lincoln Nat. Bank v. Lampe*, 414 F.Supp. 1270, 1274 (N.D.Ill.1976); see also *Bruss Co. v. Allnet Communication Services, Inc.* 606 F.Supp. 401, 405 (N.D.Ill.1985). The present complaint adequately apprises the defendants of the claimed fraud in a manner sufficient to permit adequate responsive pleadings. The Complaint names Liedesdorf, Robinson, Esrine and Glendale. It connects them to the alleged false and misleading statements in the Esrine/Glendale analysis and subsequent oral misrepresentations on or about November 1981 to February 1982. The Complaint thus alerts each defendant to the pertinent allegations.

Defendants' reliance on *D & G Enterprises v. Continental Ill. Nat. Bank*, 574 F.Supp. 263 (N.D.Ill.1983), in this regard is misplaced. In *D & G Enterprises*, the court dismissed the complaint under Rule 9(b), noting that the plaintiffs had lumped together non-defendants into the complaint. Continental thus could not accurately discern its role in the alleged violations. The complaint also did not inform Continental of the specific fraudulent acts, the times or dates of the fraud, or the circumstances under which the alleged violations took place. *Id.* at 267–68. By contrast, the Complaint in this case has stated the required times, places and manner in which the four defendants allegedly carried out their scheme. In a similar case dealing with material misrepresentations in the sale of debentures, the court held that allegations like those in this suit stated fraud with particularity. See *Elliot Graphics Inc. v. Stein*, 660 F.Supp. 378 (N.D.Ill. 1987).

In sum, the Complaint particularly alleges the purchase and sale of debentures offered to the plaintiffs by Rio Verde and R.V. Finance through Leidesdorf and Robinson. The plaintiffs have identified the documents which are alleged to contain misstatements and misrepresentations on which the plaintiffs relied in the purchase of these securities during the period of November 1981 through February 1982. The plaintiffs have detailed the precise relationship among the defendants, what documents plaintiffs received from defendants, and what each defendant knew or should have known about the truthfulness of these documents. Finally, the plaintiffs have sketched out the adverse consequences of the fraud to plaintiffs as a result of the purchase of the debentures. The plaintiffs thus have alleged enough facts in each count to meet the requirements of Rule 9(b).

*'34 Act Claims*

The defendants next contend that the plaintiffs' claims under Count 1 are untimely and move to dismiss them under rule 12(b)(6). They submit first that the limitation for § 10(b) claims discussed in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988) (en banc), bars the claims in Count 1 because the violations alleged in this case took place more than three years before the plaintiffs filed the Complaint. This court noted in *Kayne v. PaineWebber Incorporated*, 703 F.Supp. 1334 (N.D.Ill.1989), that *Data Access* was correct in light of the decision in *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). This court went on to hold, however, that it would not apply *Data Access* retroactively. See *Kayne*, at 1343–1344.

The plaintiffs' claims in Count 1 are thus subject to the limitations set forth in the Seventh Circuit's pre–*Malley–Duff* decision of *Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.1987). There the court reaffirmed that § 10(b) and Rule 10b–5 claims are subject

to the limitations period of analogous state law. The analog appropriate to this case is the Illinois Securities Act, Ill.Rev.Stat. ch. 121½, ¶ 137.13 D (Smith–Hurd Ann.1988 supp.). Prior to January 1, 1986, ¶ 137.13 D read as follows:

No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale.

Ill.Rev.Stat. ch. 121½, § 137.13 D (1983). After January 1, 1986, the law had this added provision:

provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I, or J of Section 12 of this Act which is the basis for the action, the three-year period provided herein shall begin to run upon the earlier of (1) the date upon which the party bringing such action has actual knowledge of the alleged violation of this Act, or (2) the date upon which the party bringing such an action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act, but in no event shall the period of limitation so extended be more than two years beyond the expiration of the three-year period otherwise applicable.

Ill.Rev.Stat. ch. 121½, ¶ 137.13 D (Smith–Hurd Ann.1988 supp.).

Which version of ¶ 137.13 D shall this court apply? The court in *Arnold Engineering, Inc. v. Indus. Com.*, 72 Ill.2d 161, 165, 20 Ill.Dec. 573, 575, 380 N.E.2d 782, 784 (1978), provided the answer: "Where a limitation period has not expired prior to amendment, the amendatory act controls all actions and remedies not previously barred." This rule directs this court to inquire whether the pre–1986 version of ¶ 137.13 D would have cut off the plain-

tiffs' '34 Act claims prior to January 1, 1986. The plaintiffs allege in their Complaint that they purchased the Rio Verde debentures between November 24, 1981 and "February 1982," see Complaint at ¶¶ 24–26, which this court will construe as February 28, 1982 (1982 not being a leap year). Under the pre–1986 version of ¶ 137.13 D, the limitations period for securities claims ended February 28, 1985—nearly three years before the plaintiffs got around to filing their first complaint. The pre–1986 version of ¶ 137.13 D thus controls the plaintiffs' securities claims.

February 28, 1985 comes before January 1, 1986, so the plaintiffs' claims in Count 1 are barred. Q.E.D., correct? No, the plaintiffs argue: the defendants "took affirmative acts to conceal the fraud" perpetrated on them, and thus the limitations period of ¶ 137.13 D did not start until they had actual knowledge of the defendants' fraud, which they allege they obtained on July 1, 1987. Complaint at ¶ 29.[4] In favor of their position the plaintiffs cite *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004–05 (7th Cir.1984); *Trecker v. Scag*, 679 F.2d 703 (7th Cir.1982); and *Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975).

All three of these cases announce the rule which the plaintiffs invoke here. The Seventh Circuit cast aspersions on these cases in *Norris*, suggesting that state equitable tolling principles govern § 10(b) and Rule 10b–5 claims, but the court seemingly recanted in *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 586 n. 3 (7th Cir.1987). This court held in *Pucci v. Santi*, 711 F.Supp. 916 (N.D.Ill.1989), that it would adhere to *Suslick* and not apply state statutes of repose to § 10(b) and Rule 10b–5 claims, but left open the question of whether federal or Illinois equitable tolling principles govern those claims.

---

4. On this and other motions the parties fight over the facts alleged in the plaintiffs' Complaint. This court must ignore these battles, as they are not proper in the present posture of this case. See *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985) (when considering a motion under Rule 12(b)(6), court must take the allegations of the complaint as true and view them, along with reasonable inferences to be drawn from them, in the light most favorable to the plaintiff).

■ The question left open in *Pucci* must be decided here. In *Pucci* this court noted that federal equitable tolling principles require a party to plead either his or her own due diligence or the defendant's fraudulent concealment, while Illinois requires the party to plead both due diligence and fraudulent concealment. See *Pucci*, 711 F.Supp. at 923.[5] The plaintiffs fail to allege due diligence, and thus if Illinois tolling principles governed, this court would have to dismiss Count 1 as untimely. Nevertheless, as this court indicated in *Pucci*, the federal policy favoring the right of action under § 10(b) mandates that this court embrace *Suslick* in its entirety. If this policy requires the courts to ignore state statutes of repose, it must require them to ignore state equitable tolling principles as well. The plaintiffs thus can claim federal equitable tolling, which this court can give upon proof of fraudulent concealment alone.

■ This leaves the court with the ultimate issue: do the plaintiffs allege fraudulent concealment? The court in *Tomera* held that plaintiffs need allege only a continuing scheme to defraud the plaintiffs to establish fraudulent concealment. See *Tomera*, 511 F.2d at 509–10; *Suslick*, 741 F.2d at 1004–05. The plaintiffs here plead fraudulent concealment in ¶ 29 of their Complaint. That paragraph begins strongly—it states that the defendants "took affirmative acts to conceal" their fraud—but finishes weakly, stating that these acts included dissemination of false reports on securities, some puffery in *Corporate Finance Week*, a letter to debenture holders in November 1982 saying that obstacles to profitable operations had been overcome, and negotiations over conversion of the debentures for Rio Verde common stock. The plaintiffs do not allege how these misrepresentations prevented the plaintiffs from discovering the inaccuracies contained in the Esrine/Glendale analysis, the defendants' failure to secure the $4.5 million additional financing, and the falsity of the defendants' representations as to the operations of and returns of Rio Verde's properties. Nevertheless, this case is at too preliminary a stage to warrant a summary ruling on the issue of the defendants' fraudulent concealment. This court concludes that the plaintiffs adequately plead fraudulent concealment, and thus the plaintiffs thus may proceed with their '34 Act claims.

### RICO Claims

The court now turns its attention to Count 2, the plaintiffs' RICO count. The defendants first argue that the plaintiffs fail to allege a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5). The Seventh Circuit has considered what a RICO "pattern" is on several occasions, and has focused primarily on the "continuity plus relationship" element described by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). In an effort to help the courts in this circuit ascertain whether a "pattern" exists in a case, the Seventh Circuit has listed four relevant, albeit not exhaustive,

5. The defendants contest this distinction, and cite a footnote from *Scherer v. Balkema*, 840 F.2d 437, 441 n. 8 (7th Cir.1988), for the proposition that federal equitable tolling is as rigorous a doctrine as Illinois equitable tolling. The court in *Scherer* quoted from *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir.1986), and referred to *Baker v. F & F Investment*, 420 F.2d 1191, 1199 (7th Cir.1970), in this regard. For various reasons, this court will ignore this footnote. First, *Gibson* is not controlling in this circuit, absent express adoption by the Seventh Circuit. No such step was taken in *Scherer*. Second, *Baker's* suggestion that a plaintiff "must be prepared to adduce sufficient evidence" that they remained ignorant of the defendants' fraudulent concealment "through no fault of their own" indicates nothing about whether due diligence must be *pleaded*—the issue this court faces. Third, the proposition in the *Scherer* footnote, if true, would be contrary to that expressed in a long line of Seventh Circuit cases, including *Suslick* and *Tomera*. This court would find it peculiar for the Seventh Circuit to overrule these cases without a single mention of them. Fourth, the holding of *Scherer*—that the plaintiff there had pleaded fraudulent concealment inadequately—is consistent with these earlier cases, notwithstanding the *Scherer* court's imprecise summary of the law. Scherer failed to allege either affirmative misconduct or due diligence, and thus he could not have asked for equitable tolling under *Suslick* and *Tomera*.

factors: "(1) the number and variety of acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988).

■ The plaintiffs allege at least six various acts in their Complaint: (1) the dissemination of the Esrine/Glendale analysis in November 1981; (2) misrepresentations made to Basil in January 1982 as to outside financing; (3) the same misrepresentations made to the Lenacks in November 1981; (4) the same misrepresentation made to Guinness in December 1981; (5) misrepresentations made to Basil in January 1982 regarding the Heather Mining property; and (6) misrepresentations made to the plaintiffs regarding the Rio Verde tar sands.[6] These activities occurred over a period of three months, November 1981 to February 1982. The plaintiffs allege specific injuries to five victims: Basil, Trust 320 (on whose behalf Guinness sues), and the three members of the Lenack family.[7] These activities and injuries stemmed from a single scheme to defraud, the sale of the debentures. Finally, the injuries felt by each plaintiff are separate and distinct —a factor that is of great significance. See *Appley v. West*, 832 F.2d 1021 (7th Cir.1987) (single scheme involving embezzlement of two distinct sums constitutes a pattern). This court thus holds that the plaintiffs have alleged continuous, related actions which meet the Seventh Circuit's conception of RICO's "pattern" requirement.

The defendants next contend that the plaintiffs' RICO claims are untimely. Unlike the patchwork that exists for § 10(b) and Rule 10b–5 claims, there is a single federal statute of limitations for RICO claims, the four-year limitation contained in the Clayton Act, 15 U.S.C. § 15(b). See

*Malley–Duff*, 107 S.Ct. at 2767, 483 U.S. at 156. The Court in *Malley–Duff* declined to decide the appropriate time of accrual for a RICO claim, see *id.*, and the Seventh Circuit has not ruled on the question. The Supreme Court put forth compelling reasons in *Malley–Duff*, however, for applying the statute of limitations of the Clayton Act to RICO claims; this court cannot imagine stronger reasons why this court should not adopt the Act's limitations rules wholesale, and rely on Clayton Act precedents in deciding when RICO claims accrue.

The most recent decision in this district to consider when claims under the Clayton Act accrue is *Bd. of Educ. of Evanston, Etc. v. Admiral Heating*, 94 F.R.D. 300 (N.D.Ill.1982). In that case, the defendants argued that claims relating to a 20–year history of illegal bid rigging, price fixing, and job allocation in the Chicago area were barred with respect to activities that occurred more than four years before one plaintiff, the State of Illinois, filed suit.[8] The State responded by arguing that the federal doctrine of fraudulent concealment tolled the limitations period of the Clayton Act until the State actually discovered the defendants' wrongs. The court rejected this statement of the federal tolling doctrine in favor of that put forth in *Tomera*, which this court discussed above. The plaintiffs adequately pleaded fraudulent concealment under *Tomera* with respect to their securities claims; the same holds true for their RICO claims. The plaintiffs thus may proceed with their RICO claims, as the court must conclude for the present that they are timely.

### Consumer Fraud Claims

In Count 3 of the Complaint, the plaintiffs allege a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262. The

---

**6.** The court will ignore those acts which occurred after the sale of the debentures. See *Jones*, 845 F.2d at 758 (efforts to conceal fraud do not constitute separate scheme).

**7.** The plaintiffs claim that other persons were injured, and they refer to suits filed by these persons in their brief in opposition to the defen-

dants' motions. Since the plaintiffs did not allege these facts in their Complaint, the court will disregard these references.

**8.** The court has take some liberty in summarizing the facts of *Admiral Heating* in order to ease the analysis undertaken here. For the real story, see *Admiral Heating*, 94 F.R.D. at 301.

defendants object that the plaintiffs do not state their claim in Count 3 with sufficient particularity. They further argue that acts alleged in Count 3 do not amount to a "public injury," which the defendants contend is all that the Act covers. The court can avoid this squabble (to which there is no clear answer, see *Graphic Sales, Inc. v. Sperry Univac Div.*, 824 F.2d 576, 581 n. 4 (7th Cir.1987) (Illinois courts split over whether Act requires a "public injury")) by dismissing Count 3 on other grounds: the statute of limitations.[9] The limitations provision of the Act provides that any action for damages under the Act is barred "unless commenced within three years after the cause of action accrued," unless the Illinois Attorney General or a State's Attorney commences prosecution under the Act. See Ill.Rev.Stat. ch. 121½, ¶ 270a(e).

Paragraph 262 is limited to activities relating to "the conduct of any trade or commerce...." *Id.* at ¶ 262. The Act defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution" of services, property, and other things of value. *Id.* at ¶ 261(f). The Act thus covers only those activities in this case that allegedly occurred prior to or at the time of sale of the Rio Verde debentures. As noted earlier, the last act of sale alleged in this case occurred on February 28, 1982, which means that the period for filing an action under the Act expired February 28, 1985. Of course, the Act's limitation provision is subject to Illinois' fraudulent concealment statute, see Ill.Rev.Stat. ch. 110, ¶ 13–215 (Smith–Hurd Ann.1984), but as noted earlier, the plaintiffs have not alleged due diligence, and thus the court cannot toll the running of the statute for this claim. The court thus must dismiss Count 3 for failure to state a claim upon which this court can grant relief.

## CONCLUSION

For the reasons stated in this opinion, the court denies Basil's motion to dismiss

under Rule 12(b)(3), Fed.R.Civ.P. The court further denies the defendants' motions to dismiss Counts 1–4 of the Second Amended Complaint under Rule 9(b) and their motions to dismiss Counts 1 and 2 under Rule 12(b)(6). The defendants' motion to dismiss Count 3 under Rule 12(b)(6) is granted.

---

**9.** The defendants did not raise the Act's statute of limitations in objecting to the Complaint, and normally this court would not raise it for them. But in light of the parties' wide-ranging discussion of other limitations problems—a discussion that has canvassed federal and Illinois limitations principles fully—this court deems it appropriate to raise the Act's limitation on its own initiative. See *Doe on behalf of Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414–16 (7th Cir.1986) (sua sponte dismissals "hazardous," but may be proper when sufficient basis for court's action is apparent from plaintiff's pleading).