Howard GRAFMAN, personally and on behalf of Century Broadcasting Corporation, Plaintiff,

v.

CENTURY BROADCASTING CORPORATION, a Delaware corporation; George A. Collias; Anthony C. Karlos; James S. Soter; Joseph M. Baisch; and Richard J. Bonick, Jr., Defendants.

No. 89 C 5372.

United States District Court, N.D. Illinois, E.D.

Dec. 14, 1989.

Louis R. Hegeman, Robert A. Carson, Gould & Ratner, Chicago, for plaintiff.

William T. Cahill, Thomas P. Cimino, Scott B. Greene, Phelan, Pope & John, Ltd., Chicago, for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On July 7, 1989, Howard Grafman filed suit on behalf of himself and Century Broadcasting Corporation against the corporation, George A. Collias, Anthony C. Karlos, James S. Soter, Joseph M. Baisch, and Richard J. Bonick, Jr. Grafman's com-

plaint proceeds in four counts. In Count 1, Grafman contends that the defendants have violated 18 U.S.C. §§ 1962(c)–(d) (1982), which are part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In Count 2, Grafman alleges that the defendants violated *id.* at §§ 1962(a) and (d). Counts 3 and 4 are common law claims of breach of fiduciary obligation and fraud. Grafman alleges that the defendants committed these actions in connection with a major reorganization of Century.

The defendants have moved to dismiss Grafman's complaint under Rule 12(b)(6), Fed.R.Civ.Pro. For purposes of this motion, this court must accept the allegations of fact contained in Grafman's complaint as true, and view them, along with the reasonable inferences which the court can draw from them, in the light most favorable to Grafman. See *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985).

Accordingly, these are the facts: Grafman founded Century in 1962. Presently he is a shareholder in and director of the corporation. From 1976 until December 29, 1986, Grafman owned 20% of Century's stock, the same amount owned by fellow directors Collias and Karlos. In late 1986, Collias, Karlos, and Bonick (since their names will appear together so many times, the court will call them "the Three") allegedly devised a plan to give Collias and Karlos greater control of Century through the use of fraud and self-dealing. As part of that plan, whose purposes the Three concealed from and misrepresented to Century's shareholders, Century "underwent" reorganization into a subchapter S corporation. There followed a "forced" buyout and liquidation of the shares of approximately 106 shareholders. As a result of these maneuvers, which included use of the United States Mail, Collias and Karlos's respective holdings in Century increased to 30% each, giving them voting control of the corporation when they acted in concert.

Having wrested greater control of Century, the Three negotiated and advocated a merger with another broadcasting concern, Sky Broadcasting. Apparently Century did

not consummate the merger, thanks to the vigilance of Grafman, who was president of the corporation. This prompted Collias and Karlos to divest Grafman of some of his duties and to amend the corporation's by-laws, allegedly without notice to Century's shareholders or directors. These actions vested even greater power in Collias and Karlos. Within weeks, Collias called a directors' meeting, where at the urging of Collias and Karlos the board removed Grafman as president. Bonick was in on this scheme too, allegedly making false, deceptive, and misleading statements and projections regarding Century's financial performance. According to Grafman's complaint, the Three once again used the mails to further their scheme.

After the palace coup the defendants allegedly began to enrich the Three at Century's expense. The defendants had unspecific financial transactions with financial institutions which were to Century's detriment. They borrowed great sums from a bank, partly on the basis of a personal guarantee previously tendered to the bank by Grafman, without allowing Grafman to participate in these dealings. Bonick and Collias also misrepresented Century's financial health to the bank, which somehow furthered their scheme to gain control of Century.

The crowning blows began in late 1988. In November, without obtaining the approval of Century's board or its shareholders, the Three obtained government approval for the transfer of station KMEL-FM, a Century radio property in San Francisco. The Three intended to put the property in the hands of a limited partnership which they had created, known as the San Francisco Century Limited Partnership. Creation of this partnership allegedly was the first step in a new effort to enrich Collias and Karlos; in this, the Three received help from alleged co-conspirators Soter and Baisch, who also were Century shareholders and directors. In December, the Three approached Heller Financial, Inc. to finance the purchase of another San Francisco radio station, KNBR-AM. The Three apparently intended to use the limited partnership as the vehicle for this pur-

chase, and planned to transfer partnership interests to Collias and Karlos without adequate consideration. Heller said no to the deal, and so the Three approached another bank with a slightly different proposal. That bank also balked.

Finally, in June 1989, the Three found a willing financier, Greyhound Financial Corporation. The Three then caused the assets of KMEL-FM to go to the limited partnership, whose interests were held solely (or so one can infer from Grafman's complaint) by Collias and Karlos. Other Century shareholders were left out of the deal. In order to gain approval of this transaction, the Three falsely represented to Grafman and Century's other directors and shareholders that transfer of KMEL-FM to the limited partnership was a prerequisite to Greyhound's financing the deal. Collias and Karlos also concealed from Century's shareholders and directors the existence of a bona-fide offer to purchase the shares of Century, a proposal which Collias and Karlos rejected out of hand. As a result of these transactions, Collias and Karlos now have exclusive control of KMEL-FM.

The defendants press several arguments why this court should dismiss Grafman's complaint. They first contend that Grafman lacks standing to bring his RICO claims. The RICO statute limits its private civil remedies to "[a]ny person injured in his business or property by reason of a violation of section 1962...." 18 U.S.C. § 1964(c). The defendants contend that all of the RICO injuries which Grafman alleges were not done to him, but to Century. Shareholder derivative actions are not permitted by RICO. See *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175 (7th Cir.1989); *Flynn v. Merrick*, 881 F.2d 446, 449–50 (7th Cir.1989). If this rule applied to this case, the court would have to dismiss Counts 1–2, for although Grafman has captioned his action as one brought on behalf of Century Broadcasting Corporation, he has not complied with Rule 23.1, Fed.R.Civ. Pro., which governs derivative actions.

■ Grafman does not dispute the general rule that shareholders in a corporation which has suffered from a RICO violation may not bring suit on their own. He contends, however, that his case falls within the exceptions to this rule under the federal common law, acknowledged by the court in *Flynn,* 881 F.2d at 449. One exception is where the shareholder suffers an injury which is separate and distinct from that of other shareholders, such as when a majority of shareholders deprives a minority of their right to vote or participate in the affairs of the corporation. See *Twohy v. First Nat. Bank of Chicago,* 758 F.2d 1185, 1194 (7th Cir.1985); William Fletcher, 12B Cyclopedia of the Law of Private Corporations § 5911 (Rev. perm. ed. 1984).

This exception will save some aspects of Counts 1–2, but not all of them. Most of Grafman's allegations concern harm to Century, particularly those relating to the financial improprieties of the Three and the transfer of KMEL–FM to the Century Limited Partnership. These actions harmed all of Century's shareholders, not just Grafman. Grafman does allege harms, however, which did not befall all of Century's shareholders: the diminution of his voting power on account of the 1986 reorganization of Century and the loss of his rights on account of the by-law changes made the following year. From the complaint it appears that Grafman has standing to challenge these acts.

Having persuaded the court to narrow the harms for which Grafman may recover, the defendants direct three arguments specifically against Count 1. One of them is so powerful that the court will decline to rule on the other two. The defendants argue that Grafman fails to allege "racketeering activity," as required to state a cause of action under § 1962(c). Grafman contends that he alleges mail fraud, which is a violation of 18 U.S.C. § 1341 and one of the things defined as "racketeering activity" in *id.,* § 1961(1)(A).

The defendants would accept mail fraud as being "racketeering activity" only if Grafman adequately alleged it in compliance with Rule 9(b), Fed.R.Civ.Pro. That rule states in part: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Rule 9(b) applies to allegations of fraud in civil RICO actions. See *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384, 405 (7th Cir. 1984), aff'd 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam); *Frank E. Basil, Inc. v. Leidesdorf,* 713 F.Supp. 1194, 1197–98 (N.D.Ill.1989). As this court held in *Basil, id.* at 1198, "a complaint of fraud ... is sufficient under Rule 9(b) when it sets forth the time, place, and manner of false misrepresentations, identities of parties, and the consequences of misrepresentations."

These are Grafman's allegations pertaining to the defendants' alleged mail fraud:

35. The defendants Collias, Karlos, and Bonick placed or caused to be placed into authorized depositories of the United States Mail items for delivery in furtherance of their scheme to defraud the shareholders of Century and to gain a greater share of ownership and control of Century, as follows:

    a. In or about December of 1986 in connection with the corporate restructuring which led to the increased ownership and control of Collias and Karlos; ...

    c. In or about August of 1987 in connection with the directors meeting which culminated in the termination of Grafman as President and the seizure of control by the defendants; ...

36. Each mailing as alleged above was made by or at the request of the defendants in furtherance of their scheme to defraud....

■ In these paragraphs Grafman has adequately alleged the time of the fraudulent mailings. Approximate monthly time frames are sufficiently specific for purposes of Rule 9(b). See cases cited in *Basil,* 713 F.Supp. at 1198. Time, however, is all that Grafman alleges adequately. The complaint is silent as to the places of the mailings. As for the manner of misrepresentations, all that is alleged is that the defendants mailed something. The plain-

tiffs in *Ray v. Karris,* 780 F.2d 636 (7th Cir.1985), made nearly identical allegations in their RICO suit; the Seventh Circuit rejected these pleadings for failing to allege the nature of the mailings. See *id.* at 644–45. The identities of some of the parties to this fraud are known—it is the Three who mailed the fraudulent materials—but the complaint is silent as to who received them. Finally, nothing is known about the consequences of the fraudulent mailings, except that they furthered the defendants' scheme. This too the *Ray* court rejected as being unspecific. See *id.*

Grafman is correct that Count 1 does not have to be as specific as the defendants would like. He need not allege the precise content of the defendants' mailings. See *Haroco,* 747 F.2d at 405 (plaintiff need not allege facts which would do little more to apprise the defendant of the time, place, manner, content of the parties to fraudulent activities). But as this court noted in *Basil,* one of the purposes of Rule 9(b) is to ensure that allegations of fraud are concrete and particular enough to give notice to the defendant of the conduct complained of, and to enable the defendant to prepare a defense. See 713 F.Supp. at 1198. Grafman's allegations of mail fraud in Count 1 are insufficiently particular, and thus this court must dismiss Count 1 for failure to comply with Rule 9(b).[1]

■ The court now turns to Count 2. The defendants contend that it contains a conclusory allegation that the defendants violated § 1962(a). Count 2 incorporates much of Count 1, and adds this central allegation: "The defendants Collias, Karlos, Bonick and Century have received income through a pattern of racketeering activity and have used income in the opera-

tion of the enterprise...." Complaint, ¶ 44. Grafman fails to allege, however, that he was injured as a result of the defendants' use of racketeering income. Grafman thus has not stated a proper claim under § 1962(a), see § 1964(c), and thus the court must dismiss Count 2 for failure to state a claim upon which this court may grant relief.[2]

This disposes of Grafman's causes of action under federal law. Since he has brought Counts 3–4 pursuant to this court's pendent jurisdiction, this court will dismiss those counts for lack of jurisdiction, now that Grafman has no more federal claims. See *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 611–12 (7th Cir.1986).

In summary, the court dismisses Count 1 of Grafman's complaint for failure to plead mail fraud properly under Rule 9(b). The court dismisses Count 2 pursuant to Rule 12(b)(6), and dismisses Counts 3–4 pursuant to Rule 12(h)(3).

---

1. Because the court has decided that Grafman has standing for substantially fewer harms than he has alleged, and because the allegations relating to these harms are insufficiently particular, the court will not rule on this complaint whether Grafman has alleged a "pattern" of racketeering activity as required under § 1962(c). Further, since Grafman has not adequately alleged a RICO violation under § 1962(c), he may not recover under § 1962(d) in Count 1. The court notes, however, that this is the only defect in Grafman's allegation of a conspiracy in viola-

tion of § 1962(d). Grafman adequately alleges at least one conspiracy among the defendants. See Complaint, ¶¶ 12, 13, 16–17, 19, 27, 39; *Otto v. Variable Annuity Life Ins.,* 814 F.2d 1127, 1137 (7th Cir.1986).

2. Even if Grafman alleged how the defendants' use of racketeering income injured him, this court would have to dismiss Count 2 for the same reasons it dismissed Count 1. See note 1 above.