**Howard GRAFMAN, personally and as a shareholder derivative action on behalf of Century Broadcasting Corporation, Plaintiff,**

v.

**CENTURY BROADCASTING CORPORATION, a Delaware corporation; George A. Collias; Anthony C. Karlos; and Richard J. Bonick, Jr., Defendants.**

No. 89 C 5372.

United States District Court, N.D. Illinois, E.D.

March 28, 1991.

Louis R. Hegeman, Robert A. Carson, Gould & Ratner, Chicago, Ill., for plaintiff.

William T. Cahill, Thomas P. Cimino, Scott B. Greene, Phelan, Pope & John, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The plaintiff, Howard Grafman, has filed this 8 count complaint alleging two separate injuries. The first is to himself, and the second is to the corporation, Century Broadcasting Corporation ("Century"). This opinion deals only with the latter.

This court first discussed this action in *Grafman v. Century Broadcasting Corp.*, 727 F.Supp. 432 (N.D.Ill.1989). That opinion gives the general flavor of this dispute, notwithstanding Grafman's thrice amending his complaint, and the court assumes familiarity with that opinion for purposes of this one. Counts 2, 4, 6, and 8 of the third amended complaint are brought on behalf of Century. In Count 2, Grafman contends that the defendants violated 18 U.S.C. §§ 1962(c)–(d) (1988), which are part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In Count 4, Grafman alleges violations of 18 U.S.C. §§ 1962(b) and 1962(d). In Count 6, he alleges violations of 18 U.S.C. §§ 1962(a) and 1962(d). Count 8 is a state law claim for breach of fiduciary duty. For each of these counts, in counts 1, 3, 5 and 7, respectively, Grafman brings a mirror-image claim on behalf of Grafman, himself.

In this court's July 3, 1990 memorandum opinion, it determined that Century's board could hire an independent committee to assess the validity of the plaintiff's derivative claims. *Grafman v. Century Broadcast-*

*ing Corporation,* 743 F.Supp. 544, 547 (N.D.Ill.1990). The corporation hired Resolve Dispute Management Incorporated ("Resolve"), headed by Michael Greenwald. After the corporation spent over $170,000 for the committee's report, and after an exhaustive analysis by Resolve of all of the plaintiff's claims and other potentially suspect transactions, the committee determined that the board should not pursue the derivative claims.

Delaware has developed a systematic approach for courts to use in reviewing a report by an independent committee. The court should first look at the independence of the committee, whether its recommendations were made in good faith, and whether the committee made a reasonable investigation. *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.Sup.1981). The court can then, in its own discretion, move to a second step and apply its own business judgment to determine whether the suit should be pursued. *Kaplan v. Wyatt,* 499 A.2d 1184 (Del.Sup.1985). This court is now at the stage where it is time to review the report of the independent committee. Such a review would have proceeded without haste if it was not for a recent seventh circuit case, *Kamen v. Kemper Financial Services Inc.,* 908 F.2d 1338 (7th Cir.1990). The first question confronting the court is whether *Kamen* applies retroactively.

### Retroactive Application

*Kamen* was decided in July of 1990, one year after the plaintiff filed his complaint. The seventh circuit held that there is no futility exception to the requirement of making a demand on a corporation to pursue a shareholder derivative action. *Id.* at 1347. The shareholder must make a demand, and the propriety of management's decision on whether to pursue the action shall be determined by looking to state law, in this case Delaware. *Id.* The result of this opinion was to take the very foundation of *Zapata* out from under itself.

Under *Zapata,* the standard of review depends on whether a demand was made or a demand would be futile. If a demand

was made, Delaware law instructs the court that it must assume that a demand was required. *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del.Sup.1990). In such a case the court would apply the business judgment rule, a formidable barrier to the plaintiff, which would uphold the corporations decision unless it was wrongful. *Zapata*, 430 A.2d at 784.

There are good reasons for applying the business judgment rule to cases where the board of directors of a corporation, untainted with self interest, makes an ordinary corporate decision. Courts are in the business of interpreting law, not deciding whether a board made the correct business decision. This court would be out of its element if it were to tell Chrysler that it should not have built an additional plant. Such issues are best left unlitigated or at least entitled to some degree of deference by the courts.[1] In any event, the next board of directors election could weed out board members who were not making the grade, or the market would eventually reflect the fact that something was amiss and a change was called for.

So what of the cases where no demand is made because demand would be futile. Here is the sticking point. Delaware law tells the court to look behind the failure to make a demand to determine whether demand would in fact have been futile. If demand was not futile, than the court would have to conclude that demand was required and dismiss the action for failure to make one. *Aronson v. Lewis*, 473 A.2d 805 (Del.Sup.1984). On the other hand, if demand would have been futile, then the board has the power to expand its numbers and hire an independent litigation committee. This is the case before the court.

This case is a textbook example of why Delaware developed a futility exception to the demand requirement. In this case, the plaintiff was trying to compel Century to sue the majority of its board of directors who together controlled over 50% of the corporation for self dealing. There is little doubt on this record that if the question was put to a vote, the board of directors would decline to sue themselves. If this court were to accord their decision the presumption of fairness that the business judgment rule requires, a corporation could always rid itself of derivative actions, whether or not they had any merit.

*Kamen* holds that federal common law contains a demand requirement. Therefore, the shareholder must make a demand. After the demand is made, the court must look to state law to determine the propriety of the board's decision. *Id.* at 1347. This ruling places federal courts in a rather awkward position. Delaware law's test is dependent on whether a demand was required in the first place. If demand is made then the court is to assume that demand is required and apply the business judgment rule. *Spiegel*, 571 A.2d at 775. In fact *Kamen* suggests this result. The court stated, "the making or failure to make a demand will not alter the business judgment standard that ordinarily applies to corporate decisions." *Kamen*, 908 F.2d at 1347. This is the business judgment rule.

The answer cannot be so simple. *Kamen* explicitly recognizes the use of an independent committee. Why then would there ever be a need for such a committee if a board could field all of the shareholder's pleas to sue and was protected by the business judgment rule? Any board whose members were sued would simply decline the shareholder's invitation. Their decision would be virtually unassailable.

When would *Kamen* require the board to expand its numbers and hire an independent committee? The court posits that the question would ultimately be the same: is the board so tainted with self interest that it is powerless properly to decide whether

---

**1.** The Supreme Court has expressed its disfavor with allowing the unrestrained use of derivative actions. In *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984), the Court stated that the shareholder derivative action, "could if unrestrained, undermine the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Id.* at 531, 104 S.Ct. at 836.

or not to pursue the litigation? If the board expands its numbers, then Delaware would supply the test for determining the propriety of the decision. That would be the case at bar, and an inquiry into independence, good faith and reasonable investigation would be in order. If the board does not expand its numbers then Delaware law has only two possible outcomes. The first is to assume that demand was required and apply the business judgment rule. The second is to go directly into the issue of independence, good faith, and reasonable investigation. This would eliminate the need to determine whether demand was required and allow the court to directly apply state law to the committee's decision. This result would satisfy the seventh circuit's requirement of making a demand and allow the court to apply state law to the decision of the independent committee. *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979).

It is patent *Kamen* does not help the plaintiff. *Kamen* in all likelihood would put him out of court.[2] He has either failed to make a demand or the decision by the board should be treated as any other business decision and accorded the presumption of fairness required by the business judgment rule. Even if the plaintiff had made a demand, the committee's decision could only be reviewed for its independence, good faith, and reasonable investigation. The court could then proceed to apply its own business judgment to weigh the merits of the decision.[3]

This brings to a head the first issue before the court: should the decision in *Kamen* be applied retroactively? In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court held that a newly announced rule of law should not be applied retroactively when 1) the new rule overrules clear past precedent on which litigants may have relied, 2) its purpose and effect would not be substantially furthered by retroactive application, and 3) imposing the rule retroactively would impose hardship or injustice. *Id.* at 106–07, 92 S.Ct. at 355. There is a presumption favoring retroactive treatment. *E.E.O.C. v. Vucitech*, 842 F.2d 936 (7th Cir.1988).

There is no question that the first prong of the *Chevron* test has been satisfied. *Kamen* clearly overruled past precedent by abolishing the futility exception. *Nussbacher v. Continental Illinois Bank*, 518 F.2d 873 (7th Cir.1975). The plaintiff had every reason to rely on the fact that a futility exception was still viable. Although the American Law Institute and several federal courts had expressed disfavor with the futility exception, this court could not expect the plaintiff to have anticipated a change in the seventh circuit. See *Bach v. National Western Life Insurance Co.*, 810 F.2d 509, 513 (5th Cir.1987). Furthermore, the risk to the plaintiff of making a demand and of having this court apply the business judgment rule would have been too great.

The second prong has also been satisfied. Applying *Kamen* retroactively in this case would not substantially further the purpose and effect of this new rule. *Kamen* did not hold that Delaware law does not

---

**2.** The plaintiff could argue that because *Kamen* adopted the suggestion of the American Law Institute to abandon the futility exception, *Kamen* also suggests that this court look to those rules for guidance in deciding the merits of this case. See Principles of Corporate Governance (Tent.Draft No. 8 1988) ("Corporate Governance"). The principles embodied in Corporate Governance are neither relevant nor appropriate here. *Kamen* specifically held that state law still applies to the decision of the board not to pursue a derivative claim. *Kamen*, 908 F.2d at 1347. Therefore, any advantage the plaintiff could gain by the application of the rules in Corporate Governance would be lost because this court could not follow them.

**3.** There is one final alternative. The defendant could have made a demand and then filed a lawsuit asserting that demand was futile. In response the corporation may have directly hired the independent committee without making an assessment itself of the propriety of the suit. There is some authority that in such a case the board has conceded that demand would be futile. *Abbey v. Computer & Comm. Tech. Corp.*, 457 A.2d 368 (Del.Ch.1983). Assuming, in the unlikely event, that Century opted to hire the independent committee without first rejecting Grafman's demand, the plaintiff would be left in the same position as if he had demonstrated that demand was futile.

apply. *Kamen* merely severed the link between the making of a demand and the test used by the court. Therefore, by applying state law in this case, the court is furthering the purpose and effect of this new decision. In addition, the defendant has hired an independent committee to determine whether the board should pursue this litigation. *Kamen* expressly recognizes a board's authority to do this. *Id.* at 1346.

Finally, if this court were to apply this new decision retroactively it would work an injustice on the plaintiff. Although the plaintiff asserts that he has made a demand, he clearly has not. If a demand had been made, there would have been no need to hire an independent committee. The board would have rejected a formal demand, and this court would review that decision under the business judgment rule. It is manifest that all parties to this litigation assumed that demand was excused because of its futility. In addition, the parties have relied on the fact that the court would review the report of the independent committee. This has entailed the hiring of Resolve at a cost of $170,000, and months of investigation.

Now that this court has determined not to apply *Kamen* to this case, one procedural question remains. The defendants originally brought this as a motion to dismiss, and in a footnote stated that they are also bringing this as a motion for summary judgment in case the court "is required to engage in a summary judgment like review of the issues before it." Because this is a motion for summary judgment the parties were required to file 12M and 12N statements. They have not done so. The court could reject the motion on this basis alone, however, the court has determined that it does not need 12M and 12N statements to rule on this motion. *Kaech v. Officers Grabinski and Doe*, slip op. at 4, 1990 WL 171797 (N.D.Ill.1990; Duff J.). In the future, the court expects the parties to comply with the local rules.

### Report Of The Independent Committee

In analyzing the propriety of the independent committee's decision, Delaware law supplies a two step test. The first step is to "determine whether the Committee acted independent of the corporation and in good faith conducted a reasonable investigation upon which it based its conclusions." *Kaplan v. Wyatt*, 499 A.2d 1184, 1188 (Del. Sup.1985). The court may then proceed in its discretion to a second step which requires the court to apply its own independent business judgment. *Kaplan v. Wyatt*, 499 A.2d 1184 (Del.Sup.1985).

### Independence

■ The court will first turn to the question of independence of the committee. A director is independent when he is able to reach his decision solely on the merits without being governed by outside influences or considerations. *Id.* at 1189. To show a lack of independence, the plaintiff must demonstrate that outside considerations influenced the decisions of the committee. *Id.* at 1190.

The plaintiff makes several arguments attacking the independence of the committee. The first argument is that the committee cannot be an independent because it was comprised of only one member. This argument fails for several reasons. The primary reason is that Delaware courts have accepted committee reports of only one member. *Kaplan v. Wyatt*, 484 A.2d 501, 512 (Del.Ch.1984). See also *Mills v. Esmark Inc.*, 573 F.Supp. 169, 172 (N.D.Ill. 1983). Additionally, this court cannot see any reason why a one man committee cannot be independent, or is any less independent than a two or multiple member committee.

The plaintiff next points to the fact that Greenwald was "prescreened" by the defendants before he was hired.[4] It is true that Greenwald met with the defendants prior to his appointment, but there has

---

**4.** The plaintiff also claims that Greenwald was hired by the defendant's prior to his appointment to the committee. The defendant cites to Page 44 of Karlos' deposition in support of this contention. There is no indication from the deposition that one could draw the conclusion that Greenwald was hired prior to the February 2, board meeting.

been no evidence that these contacts influenced the conclusions reached by the committee. *Kaplan,* 499 A.2d at 1190. In fact, the only available evidence indicates that Greenwald did not discuss the merits of the action until his investigation was commenced. (Rept. at 4–8). Furthermore, this court agrees with the court in *In Re General Tire & Rubber Co. Sec. Litigation,* 726 F.2d 1075 (6th Cir.1984) when it stated:

> "We cannot fashion a flat rule which allows only those individuals with absolutely no contacts with the company to exercise independent business judgment. Such a rule would preclude virtually every outside director from involvement in the business judgment by virtue of having been nominated or selected by the corporation."

*Id.* at 1084.

Plaintiff next contends that the committee lacks independence because the defendants had the corporate power to fire Greenwald. This argument contradicts the plaintiff's primary contention that the committee was nothing more than a rubber stamp for the defendants. Now the plaintiff appears to be arguing that the committee had at least the potential to find contrary to the defendants because they retained the corporate power to fire him. Noting this inconsistency, the court will address the merits of this contention.

In addressing this argument, the court will analyze the manner in which this investigation was undertaken. The committee carried out its investigation in secrecy and did not disclose its findings until the report was completed. Thus, the defendants would have no basis to fire Greenwald because they were not privy to his findings. Furthermore, the committee was given the full authority of the board to investigate the claims and determine whether they should be pursued. This belies the plaintiff's contention that the committee was not vested with complete authority to make its own determination.

### Good Faith and Reasonableness of Investigation

■ An important component in this prong of the analysis is the thoroughness of the investigation. *Kaplan,* 499 A.2d at 1191. It is essential that the committee properly identifies the relevant claims at issue. *Id.* The court notes that the committee's investigation went well beyond the plaintiff's derivative claims. The report included an exhaustive review of over 20,000 documents, evaluation of financial transactions, and interviewing of 20 witnesses. The court is satisfied that the investigation was thorough and identified the proper areas of the dispute.

Another indicia of good faith and reasonableness of the investigation is the use of capable counsel. *Id.* at 1190. In this case, the committee hired Neal Gerber & Eisenberg. There is no indication that hired counsel acted in any manner other than professionally and independently. Furthermore, although Grafman was given an opportunity to provide his views concerning outside counsel, he failed to do so. This fact alone precludes this court from questioning the good faith of outside counsel, even if it were so inclined and it most assuredly is not. *Id.*

The plaintiff, in his response, limits his attack on the report as being inconsistent, erroneous, and incomplete. The court disagrees with this characterization and points out that the plaintiff's contention concern matters that are ancillary to his underlying theory of the case.

Grafman fails to challenge the 1986 sub chapter S reorganization. This reorganization, according to the plaintiff, is the essence of his complaint because all of the alleged improprieties flow from the transfer of control from the reorganization. Instead, the plaintiff attacks bits and pieces of the report. The court finds that the report is not erroneous or inconsistent. Furthermore, even if the plaintiff were to point to one or two minor inconsistencies or inaccuracies it would not undermine the report as a whole. See *Mills v. Esmark Inc.,* 544 F.Supp. 1275, 1284 n. 7 (N.D.Ill. 1982).

The court does not find it necessary to go into each and every alleged inconsistency

or inaccuracy. Instead, the court will discuss those matters that merit further analysis.

The plaintiff attacks the report's conclusion that the interest free loans given to Collias were not worth pursuing. The plaintiff does not offer any reason why this conclusion was inappropriate. In fact, the report gives very plausible reasons why this claim should not be pursued. The report states that the amount of the claim would be small, that there were legal problems associated with any ultimate recovery, and that litigation costs would exceed the company's costs in pursuing the action. (Rpt. at 41). These conclusions, unrefuted by the plaintiff, are reasonable.

The next alleged error was that the committee attributed the payment of $131,000 in additional compensation to Collias and Karlos as no more than a rounding error. Contrary to the plaintiff's assertion, the committee did not reach this conclusion. Instead, Heller Financial determined that the additional compensation paid to Collias and Karlos did not effect its decision to lend Century money. (Rpt. at 52).

Grafman also contends that a $90,000 distribution from the San Francisco Century Broadcasting Limited Partnership to Collias and Karlos goes ignored in the report. The plaintiff is mistaken. The committee devoted more than three pages to this very issue. (Rpt. at 66–69) The reason that Collias and Karlos received this distribution was that it was made in accordance to their one percent interests in the partnership. This was a perfectly legitimate distribution.

■ Grafman's final argument is that the hiring of an independent committee for a closed corporation violates public policy. This very argument was rejected by this court in its July 1990 opinion. *Grafman,* 743 F.Supp. at 547 n. 2 (N.D.Ill.1990). This court stated, "Grafman argues that a Delaware corporation may not refer this decision to a special litigation committee when the corporation is a close corporation. Assuming for the moment that Century is such a corporation under Delaware law,

there is no support for Grafman's position under Delaware law."

The plaintiff has failed to cast any doubt on the independence of the committee, or its good faith and reasonable investigation. Because the report was a thorough analysis of all potentially suspect transactions, and there is no doubt of the committee's independence, the court will accept the report of the independent committee.

For the foregoing reasons, the court grants the defendant's motion for summary judgment on counts 2, 4, 6, and 8 of Grafman's derivative claims.